W. A. MATTHAEI ET AL. v. ERWIN J. CLARK, DISTRICT JUDGE.

No. 3034.    Decided November 19, 1919.

(216 S. W., 856.)

1.—Supreme Court—Mandamus.

Stockholders of a corporation who had not sought to intervene in an action by the State whereby its charter had been forfeited and its property placed in the hands of a trustee for liquidation, nor to institute any proceeding in the District Court in the nature of a bill of review to set aside such judgment, could not maintain suit by an original proceeding in the Supreme Court for writ of mandamus to require the district judge to vacate such judgment. (Pp. 125, 126.)

**2.—Same.**

Stockholders who had sought to intervene and procure the vacating of a judgment in the District Court whereby the corporate charter was forfeited at suit of the State and its property placed in the hands of a trustee for liquidation could not by original action in the Supreme Court have mandamus requiring the District Court, which had dismissed such intervention and refused leave to amend, to entertain same and grant the relief which it sought. The action for mandamus from the Supreme Court cannot be used as a substitute for an appeal to the Court of Civil Appeals. (P. 126.)

**3.—Mandamus—Control of Inferior Court.**

It is not the function of a writ of mandamus to control by anticipation the action of the District Court on a matter within its jurisdiction. Where authorized to require an inferior court to entertain a lawful jurisdiction which it had declined, the Supreme Court is still without power to direct by mandamus the judgment which should be pronounced, as that it should vacate a decree previously rendered, or enter a particular order or judgment. (Pp. 126, 127.

**4.—Mandamus—Control of Discretion.**

Under the powers given the Supreme Court to issue the writ of mandamus (Const. art. 5 sec. 3, Rev. Stats., arts. 1526, 1528) it can issue same against any public officer only "agreeable to the principles of law regulating such writs." These authorize its use only to enforce performance of a clear legal duty not involving exercise of discretion conferred on him by law. The writ cannot direct the appointment of a receiver or the granting of an injunction. (P. 127.)

**5.—Mandamus—Judgment.**

A judgment of the District Court forfeiting the charter of a corporation and placing its affairs in the hands of a trustee is to be treated by the Commissioner of Insurance, while in force, as valid and to be respected by him. So also is it to be treated by the Supreme Court, which will not, by mandamus, direct the Commissioner to disregard such judgment. (Pp. 127, 128.)

Original application by Matthaei and others to the Supreme Court for writ of mandamus against Clark, as District Judge, and Charles O. Austin, as Commissioner of Insurance and Banking. H. M. Richey answered as successor in office to Judge Clark.

*E. G. Senter,* for relators.—The District Court was without power to ratify, adopt and enter as its judgment, an agreement providing for the forfeiture of the charter of a corporation which was apparently, and to the knowledge of the Court, not authorized by the stockholders, but which was made directly in violation of their wishes, as appeared from the pleadings of the plaintiff in the cause.

The Court was without authority to enter at the instance of persons styling themselves directors a judgment for the forfeiture of the charter of a corporation which, upon the face of the pleadings of plaintiff was shown to be highly solvent, and which upon the pleadings of the plaintiff was shown not to have committed any offense which justified or authorized the forfeiture of its charter.

The Court was without power to enter a judgment based upon an agreement for the forfeiture of a charter, which agreement showed upon its face that it was made by attorneys several of whom were not attorneys of record for any party to the cause, and which agreement, as a matter of law, said attorneys, if they had been duly authorized to represent said corporation, were without power to make in its behalf.

The Court was without power to enter a judgment forfeiting the charter of a corporation where it affirmatively appeared from the pleadings of the plaintiff that all the acts complained of were due to the misconduct of officials of said corporation who were charged in the petition of the plaintiff to have violated the positive instructions of the stockholders, and who were charged with having entered into a conspiracy to throw the corporation into liquidation with the intent to profit thereby.

The Court was without power to take the corporation out of the hands of its stockholders and directors when it was not alleged to be insolvent, and to place it entirely under the control of a stranger.

Under the provisions of Article 1194 of the Revised Statutes, the Court was required, in the event of the forfeiture of the charter of the corporation, to appoint a receiver therefor, and could not lawfully turn over its affairs to a stranger.

Under the provisions of Article 4942k, the court was without power to do otherwise, in the event of a forfeiture of the charter of the corporation, than appoint a receiver to wind up its affairs. Said statute provides "In no other way can the Commissioner of Insurance and Banking, or any other person, restrain or interfere with the prosecuting of business of any company doing business under the provisions of this Act (which relates to insurance companies of the class of the defendant) except in actions by judgment creditors or in proceedings supplementary to execution."

Upon the showing made in the original petition of intervenors, and in their first amended petition, that the Board of Directors had not consented to the agreed judgment, and that it was had and taken in direct opposition to the expressed will of a large majority of the stockholders, the court should have proceeded to try said issue and to determine whether said corporation had in a lawful way agreed to said judgment.

Upon the allegations made in the pleadings of intervenors to the effect that said Gaffney was using his position as liquidating trustee to perpetrate a fraud upon the stockholders and to deceive them as to the value of the stock and to purchase the same at less than its real value, the court should have granted a hearing upon the application for a receivership.

The intervenors were entitled, in any event, to the appointment of a receiver for the corporation, and the court should have granted said application upon the facts before it, and should at the least have granted a hearing upon said application.

This application should be heard and writs of mandamus granted upon the showing herein made to the effect that all of the assets of said corporation, amounting to approximately $300,000, will be dissipated and the stockholders will probably lose all that remains of said corporation unless the relief herein prayed for shall be granted; and at once. .

The case of Fox v. Robbins, 62 S. W., 815, is conclusive authority in support of the contention that the intervenors are authorized to assert their right in this cause to have the judgment set aside and the corporation restored to the control of the stockholders. The attention of the court is respectfully invited to this case, which cites abundant authority in support of the rule announced and declares the right of any stockholder who has not made himself a party to the proceedings complained of to have a judgment of forfeiture vacated. The case of Mussina v. Goldthwaite, 34 Texas, 126, is cited in support of the same rule. The case of Falfurrias Immigration Co. v. Spielhagen, 129 S. W., 164, supports the right of these intervenors to have a receiver appointed by the court under the situation as it now exists.

*B. F. Looney,* Attorney-General, and *C. M. Cureton,* Assistant, for respondent Austin.

*W. E. Spell, O. L. Stribbling, Tom Henderson,* and *Denman, Franklin & McGown,* for respondent Richey, successor to Judge Clark.

MR. JUSTICE HAWKINS delivered the opinion of the court.

This is an original action in this court for writs of mandamus to the judge of a District Court and the Commissioner of Insurance and Banking, respectively, whereby nine relators, as stockholders of Texas Fidelity and Bonding Company, a domestic corporation, seek to have this court control official actions of said officers in relation to certain litigation and certain legal and business affairs of said corporation, as hereinafter more specifically indicated. Especially do relators pray that the district judge be required to vacate and set aside and that the Commissioner be required to ignore and disregard a certain judgment of the District Court, from which no appeal was prosecuted.

Relators' petition to this court covers about three hundred type-written pages, and the "brief" thereof, covering some nineteen additional pages, sets out eleven propositions of law. However, a comparatively short statement will indicate, sufficiently, the grounds upon which relators seek said extraordinary writs.

The following statement is based upon uncontroverted allegations of said petition:

On November 29, 1915, in District Court of McLennan County, 74th Judicial District, the attorney General filed a suit, No. 877, in the name of the State of Texas, against said corporation, and therein, later, by amended petition, sought forfeiture of its charter and appointment of a receiver, praying alternatively, for an injunction restraining said corporation from transacting business without first reducing the number of its directors to the minimum prescribed by law, and from exercising certain enumerated powers, and from performing acts of certain specified kinds, etc.   Answers in the name and behalf of the defendant corporation were filed, the original answer being filed at the instance of Gaffney, and his associates, all being stockholders, an amended original answer being filed at the instance of the corporation's president, McCullough.

On November 30, 1915, Harvey and five other stockholders filed, in the same District Court, a suit, No. 883, against said corporation and Gaffney and ten other stockholders, for an injunction, and for appointment of a receiver, etc.   In that second suit the defendants filed an answer, and later, the Bonding Company filed a motion to consolidate that suit with said suit No. 877 by the State, upon the grounds "that the parties are largely the same, that the relief sought by the two plaintiffs is largely the same, and that the evidence will be the same."   Said motion was not granted; but what, if any, technical disposition of that second suit, No. 883, has been made has not been shown here.

Subsequently, on January 19, 1915, there was made and signed by attorneys, as for the parties to said suit by the State, No. 877, and presented to said District Court therein, a written agreement for judgment in that cause, and thereupon that court rendered judgment in that cause, accordingly, setting out said agreement, in full, in said judgment.   Said written agreement recited pendency of said two suits, giving the number of each and the names of the parties, plaintiffs and defendants, and that "all the parties to said suits are anxious to adjust the difficulties in the defendant's affairs and save its effects and assets for its creditors and stockholders from further litigation, loss and expense."   Said agreement was signed in behalf of the State by the Attorney General and one of his Assistants, and was signed by three firms of attorneys, and one other attorney individually, as "Attorneys for Defendant Corporation and its Majority and Minority Directors and Stockholders thereof."   Among those who so signed said agreement were the attorneys who signed the original petition of plaintiffs in said second suit, No. 883, and also the attorneys who signed the answer of the defendants in that second suit, and also the attorney who signed said motion to consolidate, and also the attorney who signed the answer of the defendant corporation in the State's suit, and also the attorney who signed the amended answer of that defendant in that cause, No. 877.

Said agreement covers eight typewritten pages and includes stipulations numbered from one to fifteen inclusive. It provides among other things, for forfeiture of said charter, the corporate existence to be continued three years after such forfeiture; that all assets of the corporation be placed in the hands of two liquidating trustees, with extensive stated powers, one Gaffney, being selected by majority directors, the other, Bebout, being selected by the minority directors, their compensation being fixed, each to give bond in a stated amount at cost of the corporation, the bonds to be filed with the Commissioner of Insurance and Banking; that all salaries and all other expenses of administration be paid out of funds of the corporation upon its voucher checks signed by said trustees jointly; that said trustees prepare a full inventory and statement of all property and business affairs of the corporation, which shall be published, copies of which shall be filed in court and with the Attorney General and with said Commissioner, one copy to be sent to each stockholder, and that said trustees shall make, quarterly, to the stockholders, a full report, which shall take substantially the same course; that succession of trustees, and deposit of corporate funds, and distribution of corporate assets, shall be as therein specifically stipulated; that said trustees shall act jointly, only, and that in event of disagreement they shall refer the matter to the First Assistant Attorney General, whose decision upon the point shall be final; that the District Court shall retain jurisdiction of the suit for such further orders as may be necessary to carry out and effectuate the purpose and intention of the agreement: and that "all court costs in this litigation and in both suits" hereinabove mentioned, and certain expenses of the Attorney General in the premises, shall be paid by said corporation. Said agreement further provided for payment, by said trustees, out of funds of the corporation, of fees as follows: to each of three designated firms of attorneys whose names are signed to said agreement, "for legal services rendered on behalf of said corporation and stockholders thereof in connection with the suits in this agreement hereinabove referred to," $1250 and, to Gaffney, for all services and expense rendered and incurred by him for said corporation to that date, $250. "it being agreed by the said parties after consultation with their respective clients that said fees and amounts are proper and reasonable, and as between them agreed upon."

Said judgment declares that said agreement, therein embodied, is "in all things approved, and the parties are directed to carry out and effectuate the same," and expressly decrees that said charter be and thereby is forfeited, but that the existence of said corporation be extended three years from that date to permit settlement of its affairs, that all other relief sought by the State be denied; that all property and assets of the company be delivered at once to two therein designated liquidating trustees selected by the directors and named

in said agreement and that they proceed to carry into effect the purposes of said agreement for judgment; that said corporation, its officers, agents, directors and employees, be enjoined from interfering with the management and control of said trustees in the premises; and that costs be taxed as therein directed; and that the trial court retain jurisdiction of the subject-matter of that litigation, and full control of said decree, in order to effectuate its purpose.

Thereafter possession of all assets and control of all business affairs of said corporation were taken over, accordingly, by said trustees.

In November, 1916, eighteen individuals, alleging that they were the only remaining qualified directors of said Bonding company, filed in said suit by the State a petition for such amendment of said former judgment in that cause as should constitute Gaffney sole trustee thereunder, and increase his bond to $50,000, an averment being that petitioners and the State had agreed thereon. Four individuals as minority directors when said judgment was rendered, answered, submitting the matter to the court, alleging that they had ceased to be stockholders, tendering their resignations, and praying for an order of discharge from future duty and liability. Another individual, asserting that he still was a stockholder and director, also answered submitting the matter to the court. Bebout, one of said liquidating trustees, answered, submitting the matter to the judgment of the court, praying that in the event said original decree be so amended as to constitute Gaffney sole trustee, the court enter an order discharging him, (Bebout), and releasing him and his sureties from future liability on his bond.

On December 4, 1916, the District Court entered an order amending said original decree, and appointing Gaffney sole liquidating trustee, fixing his bond at $50,000, relieving Bebout, as joint trustee, upon the filing and approval of such bond, directing him then to turn over to Gaffney as sole trustee, and continuing, in full force and effect, otherwise, all provisions of said original decree and making them applicable to said sole trustee.

Relators charge, here, that the last preceding report of Gaffney, covering the period January 20, 1916, to February 1, 1917, filed in cause No. 877, was artfully prepared to mislead and deceive the stockholders into the belief that the stock is worthless, and that it falsely represents the stock of the corporation to be worth approximately $100,000. less than its liabilities, all in furtherance of a scheme of Gaffney and his associates to buy such stock at nominal prices; said report and a prior report of both trustees being set out in full. Relators aver that afterwards, on March 24, 1917, having obtained of the court permission so to do, eight stockholders (only two of whom are relators here), claiming to own, and as agents and trustees of others to control, stock of said corporation aggregating 1045 shares, filed in said suit by the State, their plea of inter-

vention, complaining of Gaffney, Sullivan and Webster, and alleging that in July, 1915, when said corporation was prosperous, with large assets, those three individuals, in pursuance of a practice in which previously they had been successfully engaged, conspired and undertook to "bear" the stock of said Bonding Company and then to buy it at a large profit to themselves, and to force liquidation of said company, and subsequently did so; that its stockholders did not know of said purposes or plans, or that said agreed judgment was about to be entered in that cause, and were not consulted with respect to those proceedings, and took no part therein; that upon every opportunity a majority of the directors who had no interest in connection with Gaffney and were not connected with his said schemes voted against them; that said agreed judgment was, in effect, an attempted liquidation of the affairs of the corporation without authority of its stockholders or four-fifths of them, and was without lawful grounds therefor; and that Gaffney's appointment as a liquidating trustee had enabled him more easily to depreciate the value of the stock and to buy same at a discount, and that he had done so, pursuant to said plan and conspiracy. Intervenors further alleged that when said agreed judgment was entered no creditor held any unsatisfied claim against said corporation, and there then existed no lawful ground for forfeiture of its franchise, or for its dissolution, and said judgment was agreed to without authority of its stockholders, including intervenors and those whom they represent, and that, at date of filing of said plea of intervention said corporation owned assets of more than $250,000. in excess of all liabilities; that its corporate rights and franchises are worth more than $50,000; that a great majority of the stockholders who are not associated with Gaffney never consented to any of the proceedings in that suit, and now desire that said corporation be restored to control of its stockholders and be permitted to resume business.

Said plea of intervention further averred that through said schemes and manipulations Gaffney and his associates got control of a majority of the Board of Directors, and purchased the stock of others, whom they could not control, and others, becoming discouraged, acquiesced in said proceedings without getting authority of the stockholders so to do, and by reason of facts aforesaid intervenors had no opportunity to present or make demand upon the directors to bring action against Gaffney and his associates or to take proper legal steps to protect said corporation and its stockholders, and its franchise and business, and that each and all of the Board of Directors voluntarily have abandoned their trust and ceased to represent or to pretend to represent said corporation, because whereof it is left without any agency to act for its protection except the stockholders themselves, in behalf of whom, and on behalf of said corporation, said plea of intervention was filed. Intervenors averred

that by reason of the facts alleged by them said Bonding Company had suffered damage in the sum of $250,000. They prayed, among other things, that said cause be placed upon the trial docket of the court at the ensuing term, for trial; that Gaffney be immediately discharged as such trustee and be required to make a full accounting; that he be required to disclose, by sworn report, how much of the stock had been purchased by him or at his instance while he was trustee, etc.; that said agreed judgment, and particularly the portion of it forfeiting the franchise of said corporation, be set aside by the district court, and that said corporation be restored, by decree of that court, to all of its rights and privileges as of the time of the filing of said suit by the State; that said court order that a meeting of the stockholders be held in Waco, at a time and place to be fixed by the court, and that said order direct that the stockholders be authorized to take charge of the corporation and to exercise all rights of stockholders which, as provided by law, they are entitled to exercise at an annual meeting of stockholders.

Intervenors prayed, also, that Gaffney, Sullivan, Webster, and their agents and associates, be perpetually enjoined from claiming to be stockholders, and from exercising any right as stockholders, and from assigning stock to any other person for the purpose of exercising rights of stockholders, and that intervenors have judgment, for the use and benefit of said Bonding Company, against said Gaffney, Sullivan, and Webster, and each of them, for said amount of actual damages and for a like amount as exemplary damages, and that said court decree that all stock purchased by them and their associates since Gaffney's appointment as liquidating trustee was purchased by them as trustees for said corporation, and for its use and benefit, and that payment therefor be made by credit upon said judgment for damages, or, in the alternative, out of assets of said corporation; and for general relief.

The State filed an answer to said plea of intervention, after which, in April, 1917, intervenors, by supplemental plea, alleged among other things, that the directors had abandoned their duties and turned over all assets of the corporation to Gaffney, and that he was pretending to exercise complete control thereof without authority of law and contrary to law, and in violation of the rights of the stockholders, and as a result of the condition of its properties they were subject to waste and loss and were without adequate protection, and that no stockholders meeting had been held since said agreed judgment was entered; and intervenors prayed for a receiver, etc.

Separate answers to said plea of intervention were filed by Gaffney, and by the Bonding Company acting by and through its trustees who were its Board of Directors prior to said agreed judgment; and a plea of privilege to be sued in Bexar County was filed by Sullivan.

On April 6. 1917, said plea of intervention was heard by the District Court, upon demurrers of the State and of the Bonding Company, respectively, whereupon that court entered an order sustaining said demurrers and dismissing said plea of intervention, reciting that intervenors asked leave to amend, that said leave was refused, and that the intervenors excepted and gave notice of appeal. But no appeal was prosecuted.

The nine relators (of whom only two were named in said original plea of intervention or in said supplemental plea of intervention), set out, in their petition to this court, what they term a "first amended plea of intervention," which they aver they desired, but were not permitted, to file in the District Court; also copies of reports of general manager Maxwell for October and November, 1917, showing the volume of business of said corporation, etc., and his original supporting affidavit. Said proposed first amended plea of intervention covers much of the same ground covered by said original and supplemental pleas of intervention, with amplifications and additions. And in fourteen subsequent pages relators' petition to this court reiterates and amplifies many of the allegations hereinabove mentioned, and refers to and adopts all allegations made by the State in its suit, No. 877, and all allegations made by plaintiffs in said cause No. 883, relating to plans and motives of Gaffney and his associates concerning said Bonding Company and its stock, etc. They aver that the last meeting of the stockholders held or called was on August 3, 1915, whereat the stockholders voted down the proposal of Gaffney and his associates to throw the corporation into liquidation; that the stockholders never authorized or consented to and were not advised of the proceedings in said State suit in which said agreed judgment was entered; that said agreement was made without lawful authority, and was wholly unauthorized by any person lawfully empowered to consent thereto; that no. one authorized so to do made or consented, on behalf of said corporation, to said agreement for judgment; that the stockholders never authorized, approved, or ratified the same; that action was never had thereon by the board of directors of said corporation; that no officer of said corporation, acting in an official capacity, ever authorized same or agreed thereto.; that said attorneys were without authority to act for, or to bind, or in any way obligate, said Texas Fidelity and Bonding Company with respect to the matters contained in said agreement, and particularly were they not authorized to consent to the forfeiture of the charter of said corporation; and that the names of three firms of attorneys who were not parties to the record in said cause were signed to said agreement; that they were attorneys for certain individuals in a separate and distinct lawsuit, to wit, said cause No. 833. Relators also undertake, here, to show the attitude of the then Commissioner of Insurance and Banking with reference to said corporation and to said Gaffney, and a declaration

by the latter, in a letter to the stockholders, wherein he, Gaffney, declared "my associates and myself have employed counsel and *intend to contest both cases,* as we do not believe it will be to the best interest of stockholders to have the court appoint a receiver at the instance of either the State or the disappointed minority directors above named;" and in that connection relators aver that by said letter the stockholders were led to believe that he and his associates would resist said suit by the State; but that, instead of so doing, they made it the medium of accomplishing their said purpose concerning the corporation and its affairs, with the result that thereby they caused the corporation and its stockholders loss approximating $375,000.00; and that, if the control of Gaffney and his associates is to be perpetuated, the stockholders probably will receive, at an indefinite future date, not exceeding two dollars per share.

Relators also aver that Gaffney is inexperienced and exravagant, and that stockholders have no substantial remedy against him, personally, for their said wrongs and losses; that the Commissioner, acting in accordance with law, has refused and will refuse to permit Gaffney to pay out any dividends to stockholders until all obligations of its stockholders, including bond obligations, shall have been discharged; that many of said bonds run for long periods, and complete liquidation could not be had within less than ten years; that there is no necessity for the existing expensive scheme of liquidation; and that Gaffney is unfit and incompetent to be such liquidating trustee.

Relators further aver that when said agreed judgment was entered said corporation was, and now is, solvent; that its charter was forfeited without legal right or authority so to do; that it was so delivered into possession of a stranger in violation of applicable statutes; that it is now able and authorized to transact business and has assets exceeding the amount required of it by law; that it had committed no offense for which it could have been put to death legally; that each allegation upon which the State asked forfeiture of said charter was subject to special demurrer; "that the court was without authority, upon the pleadings and the facts shown and declared in open court, to condemn said corporation to death, and was without authority to take it out of the hands of its own directors and to enjoin them from exercising control over its affairs and to place its properties in the hands of said trustees and of said sole trustee; and that the president and several directors have refused and still refuse to act in said capacity.

Relators aver, also, that said corporation never had nor claimed more than twenty-one directors; that it never exceeded its lawful powers, that no proceeding by the Secretary of State, as provided in R. S., Arts. 1142-3, looking to forfeiture of said charter for failure to pay in the full amount of stock subscription was ever taken; that the stockholders did not know that all of it had not

been paid in; and that if said suit by the State had been duly tried all of said facts would have been shown to the District Court.

Relators pray this court for relief, as follows:

(1) That this court shall, herein, require the district judge to vacate and set aside said agreed judgment.

(2) That this court shall, herein, require of said Commissioner: (a) that in all of his relations and dealings with said corporation, he shall wholly disregard said judgment; (b) that he shall call a meeting of the stockholders of said corporation at such time and place as he may designate; (c) that he shall make a complete investigation of the affairs of said corporation, and of the administration of the same since the entry of said agreed judgment, and shall submit a report, showing the results thereof, to said meeting of stockholders; (d) that at said meeting he shall direct and supervise the election of a Board of Directors for said corporation, and shall refuse to permit to be so elected any person who shall be found to have been associated with said Gaffney in a scheme to throw said corporation into liquidation, or in stock speculations growing out of or related to said scheme of Gaffney, or who shall have aided or abetted the same directly or indirectly; that if, upon investigation of the affairs of said corporation, the Commissioner shall find that, safely, it cannot be reorganized and permitted to continue in business, the Commissioner shall be required by this court (e) thereupon to institute a suit for a receivership and to wind up, according to law, the affairs of said corporation.

(3) Alternatively, that, if the aforesaid relief be denied, this court shall require of said district judge: (a) that he shall direct the clerk of his court to file, in said suit by the State, said proposed "first amended original petition of intervention" therein; and, (b) that said district judge shall try same, and shall appoint a receiver for said corporation and shall enjoin said Gaffney and all who may be associated or confederating with him from speculating in the stock of said corporation, and from circulating injurious reports concerning the same.

(4) General relief.

The effort of relators to obtain from this court, in an original action for mandamus, relief of such peculiar nature and such broad and far reaching extent, is, perhaps unprecedented.

The controlling inquiry here is: are the powers and authority of this court, in this action, so extensive as to authorize it to grant all or any of the relief for which the petition to this court prays? That inquiry must be answered negatively.

Seven of the relators, Matthaei, Wilson, Frees, Peters, Everett, Lastinger and Lunsford, appear not to have asked of the District Court any relief whatever. None of them obtained leave to intervene in said suit in which said agreed judgment was rendered, or joined in said original plea of intervention, or in the supplemental

plea of intervention therein, or otherwise submitted to or invoked the jurisdiction of that court. Said proposed "first amended plea of intervention" seems not to have been filed in or presented to that court or to the district judge. Obviously, therefore, those seven relators are not entitled, here, to such writs of mandamus.

As to the other two relators, Spencer and Wheeler, who were intervenors in said suit by the State, the merits or demerits of their stated contentions concerning said proceedings in the District Court, including said order dismissing their intervention and refusing them leave to amend, are not, in any sense, determinable by this court in an original proceeding here. The action for mandamus was not designed, and we will not permit it to be used, as a substitute for the due and orderly appeal provided by our Constitution and laws for the benefit of any party who may consider himself aggrieved by any order or judgment of a trial court.

By obtaining leave to intervene, and filing their original plea of intervention, in the suit wherein said agreed judgment had been rendered, said two relators became, in a sense, parties to that cause, and, as such, acquired, it may be assumed, a right at the proper time and in the manner provided by law to seek relief from said order dismissing their intervention and refusing them leave to amend; but such an appeal lies, under our statutes, to the proper Court of Civil Appeals, and not to this court. Such an order or judgment of the District Court will not be reviewed by this court in an original action, filed here, for the writ of mandamus. Accordingly we now decline to direct said District Court, or the Judge thereof, to set aside or vacate said agreed judgment, or to order filed and to try out said proposed plea of intervention.

Moreover, it is not the function of a writ of mandamus from this court to control, in a purely anticipatory sense, action of a District Court, or of a judge thereof, in a matter potentially or even actually within the jurisdiction of such court or judge. Consequently, even if this case were considered and treated as one in which we were called upon, and felt impelled, in an original action of this character, to require the filing and hearing in the District Court of a petition specifically in the nature and form of a bill of review to set aside or vacate a judgment or decree rendered at a former term of that court and clearly final in all respects, this court still would be without power or authority, herein, to determine or to direct, in advance, that such former judgment be set aside or vacated, or to direct the rendition or making by the District Court, or the judge thereof, in such main cause, of an order or judgment of a particular character, appointing a receiver, granting an injunction, etc., to the effect here prayed for by relators. To do so would be to invade and usurp the province and powers and to control the discretion of the trial court or of the district judge.

Our State Constitution provides that, under such regulations as may be prescribed by law, this court may issue writs of mandamus and such other writs as may be necessary to enforce its jurisdiction, and declares that the Legislature may confer original jurisdiction on the Supreme Court to issue writs of mandamus in such cases as may be specified, except as against the Governor of the State Art. 5, Sec. 3.

Our statutes confer upon this court power to issue writs of mandamus and all writs necessary to enforce its jurisdiction, and to issue writs of mandamus, "agreeable to the principles of law regulating such writs," against any district judge or officer of the State government, except the Governor.    Art. 1526.

But, as applied to the facts of this case, those quoted words, as there used, imply that in accordance with immemorial custom and usage, and our settled practice, this court is not to issue such writ against any public officer except to enforce performance of a clear legal duty not involving exercise of discretion conferred upon him by law.

Another statute, Art. 1528, confers upon this court authority, by the writ of mandamus "to compel a judge of the District Court to proceed to trial and judgment in a cause, agreeably to the principles and usages of law." It is well settled that, under its operation, the writ merely enforces due performance of a plain legal duty, without undertaking to control, in the slightest degree, the discretion of the trial court or judge.   Such settled operation of Art. 1528 confirms the soundness of our above stated conclusion concerning the restrictive effect of Art. 1526.   A similar statute, Art. 1529, authorizing Courts of Civil Appeals to issue said writ, has been similarly construed.

It follows that, under the plainly written law, this court, in this original action here, is without authority peremptorily to direct the appointment of a receiver or the granting of an injunction as here prayed for by relators.

As to the Commissioner of Insurance and Banking the relief which relators seek, here, as against him, must, likewise be wholly denied. Said agreed judgment, upon its face, appears to have been rendered, and said modification thereof seems to have been made, by a court having jurisdiction over the subject-matter of the litigation and over said Bonding Company, in a suit by the State brought by the Attorney General, and from such judgment, and from such modification thereof, no appeal has been taken.

Under such circumstances this court must treat said judgment of the District Court, as so modified, as still operative and binding upon both the State and said defendant corporation.   In that view of the matter it is unreasonable to say that it is the clear legal duty of the Commissioner of Insurance and Banking, an officer of the State government, to ignore and disregard said judgment in dealing

with said corporation and its affairs. Indeed, for him to do so would be both absurd and revolutionary. Moreover, all and any of the above affirmative acts to which relators here seek to force the Commissioner certainly would be out of harmony with, and some of them would be in practical contravention of, terms and provisions of said agreed judgment, which, as we have seen, the Commissioner, under existing circumstances, is duty bound to respect.

Whether all or any of such affirmative acts would or would not be within the scope of the official duties of the Commissioner, in the absence of such judgment of the District Court, we need not now determine. Some of those acts necessarily, and obviously, would involve the exercise of discretion.

Manifestly, therefore, this court, in this action, is powerless to direct or control the official course or actions of the Commissoner of Insurance and Banking in the premises.

Nothing herein is to be construed or understood as expressing or indicating any' shade of opinion concerning any right, real or claimed, of relators, or any of them, to relief in any action or proceeding other than an original action in this court.

The petition to this court being without merit, writs of mandamus will be refused .